## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In Re:

     **Janice Richard,**                 **Chapter 13**
     **Debtor**                      **Case No. 23-11882**

## MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS

Janice Richard ("Debtor") hereby move under 11 U.S.C. s. 363 and Bankruptcy Rule 6004(c) for authority to sell her interest in the real estate at 17 McKinnon Avenue, Milton, MA (the "Property") free and clear of liens and encumbrances. The notice of sale free and clear of liens and encumbrances will be served on all creditors listed by the Debtor and other parties in interest who have requested notice. The notice will give all parties in interest the opportunity to object and/or to make their liens known. Any interest in the property, when established, shall attach to the proceeds realized from the sale of the Property. The proposed buyer's bid of $930,000.00 represents the highest price offered for the Property. This private sale is in the estate's best interest, as being the highest offer received by the Debtor.

The Debtor has the following recorded liens and encumbrances against the Property: a first mortgage to Citizens Bank of approximately $142,000.00; past due real estate taxes, water, sewer, and trash charges to the Town of Milton of approximately $13,300.00; and a secured claim by the Massachusetts DOR of approximately $107,410.00. Other expenses of the sale include a broker's fee of 4% to Tara O'Riodan of Coldwell Banker Realty as approved by the Court; and any legal fees and closing costs as required. After payment in full of the mortgage, secured claims, broker's fee, legal fees, and closing costs, Debtor will receive up to $500,000.00 of the proceeds as exempt property per Debtor's Schedule C. Any proceeds to Debtor of over $500,000.00 will be turned over to the Chapter 13 Trustee for distribution to creditors.

Notice to parties in interest will include the date of the hearing on this Motion and the time within which objections may be filed and served on the Debtor's counsel.

**Wherefore**, the Debtor requests that this Court issue an Order approving the attached form of Notice, allowing her Motion to Sell Real Property of the Estate Free and Clear of Liens, and for such other relief as the Court deems just.

Date: January 23, 2025

Debtor,
by her attorney,

/s/ John Ullian
John Ullian, Esq.
The Law Firm of Ullian & Associates, P.C.
220 Forbes Road, Suite 106
Braintree, MA 02184
(781) 848-5980
BBO No. 542786

Docusign Envelope ID: AFB12C90-2365-45A1-B4DA-5DB8TDocument

# PURCHASE AND SALE AGREEMENT
1/15/2025

### Date: January ___, 2025

| | | |
|---|---|---|
| 1. | PARTIES AND MAILING ADDRESSES (fill in) | **Janice Richard**, hereinafter called the SELLER, agrees to SELL and **Michaela Marsters and Sean W. Marsters**, hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: |
| 2. | DESCRIPTION (fill in and include title reference) | The land known as **17 McKinnon Avenue, Milton,  MA  02186 and described in a deed dated June 24, 1977, recorded with the Norfolk Registry of Deeds in Book 5347, Page 674, with the improvements thereon.** |
| 3. | BUILDINGS, STRUCTURES, IM-PROVEMENTS, FIXTURES (fill in or delete) | Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and all the fixtures and appliances used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, window blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, air conditioning equipment, ventilators, all appliances now present, including the stove, refrigerator, washer/dryer, microwave, and all other personal property which the Seller does not remove prior to the closing. |
| 4. | TITLE DEED (fill in) * Include here by spe-cific reference any re-strictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to pro-tect SELLER against BUYER's breach of SELLER's covenants in leases, where neces-sary. | Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven      days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except<br>(a)  Provisions of existing building and zoning laws, but in compliance therewith;<br>(b)  Existing rights and obligations in party walls which are not the subject of written agreement;<br>(c)  Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;<br>(d)  Any liens for municipal betterments assessed after the date of the delivery of such deed;<br>(e)  Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the use of said premises as a single-family residence. |
| 5. | PLANS | If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration. |
| 6. | REGISTERED TITLE | In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title. |
| 7. | PURCHASE PRICE (fill in); space is allowed to write out the amounts if desired) | The agreed purchase price for said premises is **Nine Hundred Thirty Thousand ($930,000.00)** Dollars, of which |

| | | |
|---|---|---|
| $   45,500.00 | | has been paid as a deposit this day, |
| $    1,000.00 | | has been paid to bind the BUYER's offer, and |
| $ 883,500.00 | | are to be paid at the time of delivery and recording of the deed by certified, cashier's, treasurer's or bank check(s), or attorney's |
| $_____ | | IOLTA conveyancing check, each drawn on a Massachusetts bank |
| $ 930,000.00 | TOTAL | and payable to Seller without endorsement or wire transfer. |

Page 1

DocuSign Envelope ID: AF84EC90-A36F-45A1-B4DA-5DB8D4C4…

| 8 | TIME FOR PERFOR-MANCE; DELIVERY OF DEED (fill in) | Such deed is to be delivered at 12:00 o'clock noon on **March 31, 2025** at the office of BUYER's attorney **as set forth herein,** unless otherwise mutually agreed upon in writing (sometimes herein referred to as the "Closing" as the same may be extended pursuant to the terms of this Agreement). **The parties hereby agree that the Seller and/or Seller's Counsel shall not be required to attend the Closing and may pre-execute and deliver all customarily required original documents via Power of Attorney, provided the deed is signed personally at or before the time of Closing.  It is agreed that time is of the essence of this agreement.** |
| --- | --- | --- |
| 9. | POSSESSION AND CONDITION OF PREM-ISES (attach a list of excep-tions, if any) | Full possession of said premises free of all tenants and occupants and broom swept clean, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) **in the same condition as when Buyers made their offer to purchase, reasonable wear and tear ex-cepted,** (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof and all other terms of this Agreement.  The BUYER shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause and Agreement. |
| 10. | EXTENSION TO PER-FECT TITLE OR MAKE PREMISES CONFORM (change period of time if desired). | If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of up to thirty (30) days. The SELLER shall not be obligated to expend more than **$2,500.00,** pursuant to this paragraph, exclusive of voluntary and municipal liens. |
| 11. | FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then, at BUYER's option, any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. |
| 12. | BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title. |
| 13. | ACCEPTANCE OF DEED | The delivery, acceptance and recording of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, **whether regarding title to the Premises or otherwise,** except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER shall, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or in the case of institutional mortgages which are paid in full from the sale proceeds, within a reasonable time thereafter in accordance with customary conveyancing practice. |
| 15. | INSURANCE *Insert amount (list additional types of insurance and amounts as agreed) | Until the delivery, acceptance and recording of the deed, the SELLER shall maintain insurance on said premises, including fire and casualty insurance in an amount necessary to cover the full replacement value of the exterior and interior portions of the dwelling.<br><br>**All risk of loss shall remain with Seller until delivery of the deed.** |
| 16. | ADJUSTMENTS (list operating ex-penses, if any, or attach schedule) | Water and sewer use charges, taxes for the then current fiscal year shall be apportioned and fuel value (if any, pursuant to a written reading from the SELLER's commercial fuel company) shall be adjusted, as of the day of performance of this Agreement and the net amount thereof shall be added to or deducted from, as the case may be, the Purchase Price payable by the BUYER at the time of delivery of the deed. |

Page 2

DocuSign Envelope ID: AF84EC90-A355-45A1-B4DA-5DB8...

| 17. | ADJUSTMENT OF UN-ASSESSED AND ABATED TAXES | If the **final** amount of said real estate taxes **for the fiscal year during which the deed is delivered** is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |

| 18. | BROKER's FEE (fill in fee with dollar amount or percentage; also name of Brokerage firm(s) | A Broker's fee for professional services of 4.0% ($37,200.00) is due from the SELLER to Coldwell Banker (2%) and Seaport Realty Group (2%) the broker herein, but only if, as, and when papers are passed, the full purchase price is paid and the deed is recorded in accordance with all provisions of this Agreement. |

| 19. | BROKER(S) WARRANTY (fill in name) | The Broker(s) named herein warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts. |

Seller's agent
Name: Tara O'Riordan
License Number:
Company Name: Coldwell Banker
Company License Number:
Address:
Agent phone #
Email:

Buyer's agent
Name: Lynn Hollenbeck
License Number:  9026340
Company Name: Seaport Realty Group
Company License Number:  7668
Address:
Agent phone #   711 East Broadway
Email:          South Boston, MA 02127
                617-943-5818
                lynn@seaportrealtygroup.com

By execution of this Agreement, the BUYER and SELLER specifically authorize the distribution of the ATLA settlement statement to the aforementioned Agents/Brokers.

| 20. | DEPOSIT (fill in name) | All deposits made hereunder shall be held by **Coldwell Banker, as escrow agent,** subject to the terms of this agreement and such deposits shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending written instructions mutually given by the SELLER and the BUYER or as directed by the final, non-appealable order of a court of competent jurisdiction. The delivery, acceptance and recording of the deed shall in all cases constitute the SELLER'S and the BUYER'S joint authorization for the release of all deposits held hereunder and all other disbursements to be made in accordance with the HUD/Closing Disclosure/ALTA Settlement Statement or similar closing statement signed by the SELLER and the BUYER pursuant to this Agreement. |

DocuSign Envelope ID: AFB1E093-235F-45A1-B4DA-5DB8EF45E8A7

| 21. | BUYER's DEFAULT; DAMAGES | The parties acknowledge that the SELLER has no adequate remedy at law or in equity in the event of the BUYER's failure to fulfill her obligation hereunder because it is impossible to compute, exactly, the damages that would accrue to the SELLER in such event. The parties have, therefore, taken these factors into account in setting the amount of the deposits and hereby agree that: (a) the deposits are the best estimate of such damages which would accrue to the SELLER; (b) the deposits represent damages and not any penalty against the BUYER; and (c) if the BUYER shall fail to fulfill the BUYER's obligations hereunder, and SELLER is not in default under the terms of this Agreement, the deposits shall be retained by the SELLER as the SELLER's full and liquidated damages in lieu of all other rights and remedies which the SELLER may have against the BUYER at law or in equity for such failure, whereupon all other obligations of the parties hereto shall cease and this Agreement shall be null and void and without recourse to the parties hereto |
|-----|--------------------------|---|
| 22. | RELEASE BY HUSBAND OR WIFE | The Seller's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises. |
| 23. | BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder **of any corporation, any member or manager of any limited liability company** or any beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |

Page 4

| | | |
|---|---|---|
| 25. | WARRANTIES AND REPRESENTATIONS (fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by the SELLER: none, except a provided herein. |

The SELLER and the Broker(s) have made no representations as to the condition of the Premises other than as set forth in this Agreement and the attachments hereto

BUYER warrants, represents and acknowledges to SELLER and agrees that SELLER is relying upon the following: By execution of this Agreement, BUYER acknowledges that BUYER has had BUYER's opportunity to conduct any and all inspections of the Premises (either independently or through agents of the BUYER's choice) or has waived any right to an inspection, including all improvements thereon, and any and all component parts thereof, desired by the BUYER (and that the SELLER has no responsibility for any failure by the BUYER to fully exercise such inspection rights), including, without limitation, mechanical, structural, groundwater tables, utility systems, all appliances and personal property being conveyed with the Premises as provided in this Agreement, pest, termite, lead paint, asbestos, radon, mold and any hazardous chemicals, materials, or substances, dimensions and area of the Premises, and that BUYER is fully satisfied with the results of same, and accepts the Premises "AS IS" (as of the time of BUYER's Offer), reasonable use and wear thereof excepted, and is not relying upon any representations of the SELLER or SELLER's agents in connection with same and in connection with BUYER's decision to purchase the Premises (other than those specifically set forth in this Agreement), including, without limitation, as to the character, quality, use, value, quantity or condition of the Premises except as expressly set forth herein. BUYER further represents and agrees that the existence of any matter or condition revealed by, or which could have been revealed by such inspections shall not be deemed to be a default by SELLER under this Agreement. Any statements which may have previously been made by the SELLER, including without limitation in any realtor's/broker's questionnaire or so-called "Seller's Disclosure Statement" or property listing information, if any, are specifically hereby voided and are superseded by this Agreement. BUYER acknowledges and agrees that SELLER shall have no obligation to repair any defect existing on the date of this Agreement. Without intending to limit the generality of the foregoing, SELLER does not warrant or represent that the Premises complies with current municipal, county, state or federal codes, ordinances, statutes, laws, regulations or the like, relating to zoning, building, environmental, health or any involving the maintenance, operation or condition of the Premises. BUYER hereby agrees that SELLER shall have no responsibility or liability for complying with any codes, ordinances, statutes, laws, regulations or the like which relate to lead paint, asbestos, radon, mold, hazardous chemicals, materials, or substances or any requirements that SELLER remove any or all of the same, BUYER hereby assuming any and all such responsibility and liability. SELLER makes no representations concerning the accuracy of any information provided by the realtor(s) or broker(s) unless expressly incorporated into this Agreement. The provisions of this paragraph shall survive the Closing and delivery of the Deed hereunder.

| | | |
|---|---|---|
| 26. | MORTGAGE CONTINGENCY CLAUSE Waived | In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of **837,000.00** at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before **March 10, 2025** the BUYER may terminate this agreement by written notice to the SELLER and/or Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage application conforming to the foregoing provisions within three business days of the date of this agreement. |

| | | |
|---|---|---|
| 27. | CONSTRUCTION OF AGREEMENT | This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the parties to it. |
| | | Signatures to this Agreement, including electronic signatures, transmitted by facsimile or email shall be valid and effective to bind the party so signing. Each party agrees to promptly deliver an execution original to this Agreement with its actual signature to the other party, but a failure to do so shall not affect the enforceability of this Agreement, it being expressly agreed that each party to this Agreement shall be bound by its own telecopied or emailed signature and shall accept the telecopied or emailed signature of the other party to this Agreement |
| 28. | LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. | SMOKE AND CARBON MONOXIDE DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver an unexpired certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors and carbon monoxide detectors in conformity with applicable law. |
| 30. | ADDITIONAL PROVISIONS | **Addendum "A" attached hereto, are incorporated herein by reference.** |

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

*Michaela Marsters*
SELLER — Michaela Marsters, Buyer

*Sean M.* [signature]
BUYER — Sean W. Marsters, Buyer

*Janice Richard*                    01/15/25
Janice Richard, Seller

Page 6

ADDENDUM "A"

TO PURCHASE AND SALE AGREEMENT

Seller:  Janice Richard

Buyer:  Michaela Marsters and Sean W. Marsters

Premises: 17 McKinnon Avenue, Milton, Massachusetts

31. Any notice required or permitted to be given hereunder shall be in writing and delivered by hand, or if during business hours, by facsimile or email with proof of transmission, or mailed, postage prepaid, by priority mail, to the parties at the following addresses:

If to Buyer:

Michael William Broderick, Jr., Esq.
Law Office of Michael W. Broderick, Jr.
234 Copeland Street, Suite 230
Quincy, MA 02169
Phone: 617-328-1167Fax: 617-328-1169Email: michael@brodericklewis.com


If to Seller:

David A. Miller, Esq.
Law Office of David A. Miller, PC
45 Bowdoin Street (Beacon Hill)
Boston, MA  02114
P (617) 523-5533
Fax: (617) 523-6661
david@damlawpc.com (email)

Any such notice shall be deemed properly served, if mailed, at the time such notice is deposited in any post office regularly maintained by the United States Postal Service, if delivered by hand, at the time delivered, or if by facsimile or email at the time of transmission.

32. Buyer and Seller hereby authorize their respective attorneys to assent and execute on their behalf any agreements extending the time for performance of any event or the giving of any notice that may be given under this Agreement, and the Buyer and Seller shall be able to rely upon the signatures of said attorneys as binding unless they have actual knowledge that the principals have disclaimed the authority granted herein to bind them.

33. Any matter relating to the performance of this Agreement which is the subject of a title or practice standard of the Real Estate Bar Association (REBA), formerly known as the Massachusetts Conveyancer's Association, shall be governed by the provisions of said standard to the extent applicable, unless such title or practice standard conflicts with the express terms hereof.

34. Buyer warrant to Seller and Seller warrants to Buyer that neither has dealt with a broker or person entitled to a broker's commission in connection with this transaction, except those named herein who are entitled to commissions as set forth in section 18, and agree to hold each other harmless and indemnify the other against all damages, claims, losses and liabilities, including legal fees, incurred as a result of the failure of this warranty.

35. Seller agrees to permit Buyer and their designees access to the Premises, with reasonable notice, in the presence of Seller or Seller's agent for the purpose of making measurements, appraisals, inspections etc.  Buyer shall indemnify Seller from and against all liabilities,

Page 7

Authentication: E7A56f5e1fD3-AFB3EC90-7336-45A1-B4DA-5DB8-f-988849

damages, claims, and costs (including reasonable attorney's fees) arising out of any action taken by Buyer pursuant to this paragraph, provided said liabilities, damages, claims and costs are not due to Seller's negligence or willful misconduct. Buyer's indemnification herein shall be in addition to and not in any way limited by the deposit amounts held pursuant to this Agreement.

36. This Agreement represents the full and complete understanding of the parties and shall supersede all offers and agreements made prior to this Agreement, including, without limitation, the memorandum executed by the Parties hereto, entitled "Offer to Purchase Real Estate". All obligations of the Parties are contained only in this Agreement, except as the Agreement may be modified or altered by a written agreement signed by all the parties hereto.

37. Buyer shall be allowed a "walk-through" of the premises within the 24 hours prior to the closing to review condition of the premises. Notwithstanding any other provisions of this Agreement regarding the conditions of said Premises, at the time of the delivery of the deed hereunder, the Premises shall be delivered in broom-clean condition, free of all of Seller's possessions (except for those items being conveyed with the Premises as provided in this Agreement). All other areas of the Premises, including, without limitation, garage, closets, attic, basement, under-porch/deck areas, and shed shall be delivered free of all Seller's possessions including building materials such as lumber, insulation, and the like, paints, solvents, chemicals, trash and/or debris of any kind, and personal property (except for those items being conveyed with the Premises as provided in this Agreement)

38. Seller shall execute, acknowledge and deliver simultaneously with the delivery of the deed a title insurance affidavit certifying to the absence of parties in possession and the absence of persons entitled to liens for work performed on or materials supplied to the premises, a "non-foreign" affidavit in compliance with the I.R.C. Section 1445(b)(2) and the regulations thereunder, a completed form W-9 certifying to each Seller's social security or taxpayer identification numbers, an affidavit as to the true purchase price of the Premises and whether the Seller has or intends to lend to the Buyer a portion thereof; UFFI disclosure affidavit stating that to the best of Seller's knowledge there is none, and a 1099 reporting form. Seller agrees to sign all documents customarily required by Buyers' lender in connection with obtaining mortgage financing, provided, however, that Seller shall not be required to execute any survey affidavit regarding the boundaries of the Premises, the existence of water ways, cemeteries, ways, etc. or the existence of unrecorded restrictions or easements or disputes regarding boundaries.

39. Notwithstanding any other provision contained herein, in the event that any date specified herein should fall on a Saturday, Sunday or legal holiday, then said date shall be construed to mean the next day which is not a Saturday, Sunday or legal holiday.

40. It is understood and agreed by the parties that the Premises shall not be in conformity with the title provisions of this Agreement unless:

(a) All buildings, structures and improvements on the Premises, including, but not limited to, any driveway(s), garage(s), cesspool(s), well(s), septic system(s), leaching field(s), shed(s), if any, and all other improvements intended to be included in the sale and all means of access to and egress from the Premises shall be wholly within the lot lines of the premises and shall not encroach upon, over or under any property not within such lot lines or property of any other person or entity, unless pursuant to an indefeasible easement of record;

(b) No building, structure, improvement, including, but not limited to, any driveway(s), garage(s), cesspool(s), well(s), septic system(s), leaching field(s), fence(s), shed(s), way(s), if any, or property of any kind encroaches upon, over or under the Premises from other premises, unless pursuant to an indefeasible easement of record;

(c) Title to the Premises is insurable, for the benefit of the Buyer, by a title insurance company reasonably acceptable to Buyer, in a fee owner's policy of title insurance, at normal premium rates, on the American Land Title Association form currently in use, subject only to the exceptions permitted under Paragraph 4 of this Agreement and those printed exceptions to title normally included in the "jacket" to such form or policy and the customary Schedule "B" exceptions;

(d) The premises abut and have vehicular and pedestrian access to a public way, duly laid out or accepted as such by the town or city in which the Premises are located or to a private way which the owners of the premises have the right to use for all purposes for which public ways are commonly used in the town or city in which the Premises are located providing access to such public way.

It is agreed that in the event of a title matter for which a title insurance company is willing to issue a so-called "clean" policy or provide "affirmative coverage" over a known defect or problem, BUYER may elect to accept same but shall not be required to do so, and shall have the right, at the option of their counsel, to deem title to the premises unacceptable or unmarketable and to terminate this Agreement, whereupon all deposits made by the BUYER pursuant to this Agreement shall be refunded to BUYER forthwith and this Agreement shall be null and void and without further recourse to the Parties hereto.

41. For purposes of this Agreement, facsimile or electronic signatures (such as a scanned TIFF or PDF file) shall be construed as original, except as to the deed and the closing documents, and except as to documents intended to be recorded, provided however that no party shall avoid any obligation hereunder by failing to provide such original signature.

Page 8

DocuSign Envelope ID: AFB48C93-2369-4B5A1-B4DA-5DB9CE33F4A5

42. All of Seller's representations under this Agreement are to the Seller's actual knowledge, and without conducting any independent investigation or inquiry and are not intended to imply or create any obligation for the Seller to take additional actions or more further inquiry with regard to any topics contained within this Agreement or elsewhere, including but not limited to, documents, to be executed in conjunction with the Closing; furthermore, it is acknowledged and agreed by the Parties that any such representations shall not constitute a representation or warranty against the existence of such conditions about which Seller has no actual knowledge, nor a representation or warranty against the discovery or occurrence of such conditions.

43. If this Agreement or any other provisions by way of reference incorporated herein shall contain any term or provision which shall be invalid, then the remainder of the Agreement or other instrument by way of reference incorporated herein, as the case may be, shall not be affected thereby and shall remain valid and in full force and effect to the fullest extent permitted by law.

44. Both Buyer and Seller hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement.

45. By execution of this Agreement, Buyer and Seller hereby authorize the release of the signed ALTA Settlement Statement to the broker(s) named herein.

46. In the event the Buyer records a copy of this Purchase and Sale Agreement with the Registry of Deeds, Seller may, at its option, declare this agreement null and void and Buyer shall be deemed to be in default of its obligations hereunder.

47. The SELLER represents to the best of SELLER's knowledge that:

(a) There is no pending bankruptcy, mortgage foreclosure, or other proceeding which might in any material way impact adversely on SELLER's ability to perform under this Agreement (other than Seller's chapter 13 proceedings which have been disclosed to Buyer which have stayed the Seller's lender's foreclosure proceedings).

(b) There are no other existing rights or other consents required for the completion of delivery of the deed other than the existing mortgages, if any, on the Premises for which SELLER shall secure releases using the purchase money hereunder.

(c) The SELLER has no knowledge of any municipal betterments effecting the Premises voted or contemplated by the municipality which is likely to result in an assessment against the Premises.

(d) Seller represents that it has unencumbered ownership of all fixtures and appliances and systems used in connection with the furnishing of utilities to the subject premises.

48. Buyer will obtain an appraisal at Buyer's expense and share this appraisal with Seller's counsel and Seller's IRS representative.

49. Buyer will also obtain a title exam at Buyer's expense and share this title rundown with Seller's counsel and Seller's representative.

50. The parties agree and acknowledge that this Agreement is subject to Bankruptcy Court approval which may take 3 to 6 months and the parties may agree to extend the closing in writing to allow Seller more time to clear title issues beyond the closing day and what Seller is entitled to under paragraph 10 above. If the title issues have not been cleared up within 90 days of the execution of this Agreement or prior to the expiration of any extension pursuant to Paragraph 10, whichever shall occur last, the Buyers shall have the option of terminating this Agreement without any recourse to either party.

50.     CONTINUATION OF PARAGRAPH 9. Notwithstanding anything herein to the contrary, in the event of damage to or destruction of the premises by fire, vandalism or other casualty and in excess of $10,000.00 and said Premises do not conform to the provisions of this Agreement, or in the event of a taking of all or part of the premises by eminent domain, then at the BUYER's option, this agreement may be terminated and all deposits paid hereunder by the BUYER shall be immediately refunded to the BUYER and this agreement shall become null and void without recourse to the parties hereto.

51.     HAZARDS. SELLER represents that to the best of their knowledge:

(a)     No party has generated, treated, stored, released, discarded or disposed of Hazardous Waste on the Premises, excepting normal household items in normal household quantities. For the purposes of this Agreement, "Hazardous Waste" shall mean any "hazardous material" or "oil" as defined in the Comprehensive Environmental Responses, Compensation, and Liability Act, 42 U.S.C. Section 9601, as amended, and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, as amended, or in regulations adopted thereunder;
(b) There are no underground oil tanks located on the Premises; and

Page 9

(c)     Pursuant to Massachusetts General Laws chapter 255 section 121, that Urea Formaldehyde Foam Insulation is not present in the Premises.

52.     PERMITS:  SELLER represents that with respect to any work SELLER has caused to be undertaken at the Premises, such work was performed pursuant to building permits, if so required by the Town/City, with said permit(s) having received final sign-off and closure by the Building Inspector of the Town/City ("Inspector") and that SELLER has no knowledge of any "open" building permits.  In the event that there are any such "open" building permits, then SELLER shall obtain a final sign off by the Inspector for said "open" building permits.

53.     Except as otherwise herein provided, the statements contained in this Agreement refer to the date of execution of this Agreement.  SELLER will promptly notify BUYER of any change in facts, which SELLER becomes aware of, which arise prior to the Closing which would make any such statement untrue if such state of facts had existed on the date of execution of this Agreement.

54.     TRID: The Buyer and Seller acknowledge that the mortgage regulations promulgated by the federal Consumer Financial Protection Bureau (CFPB) effective October 3, 2015, and know as the TRID (TILA-RESPA Integrated Discloure) Rule, may affect the parties ability to close on the date and time specified this Agreement. To provide for possible delays and reasonably to accommodate each other, the Seller and Buyer agree as follows: In the event Buyer's mortgage lender is unable to close on the closing date set forth in this Agreement, the closing date may be extended upon written notice from Buyer to Seller for a period not to exceed five (5) business days, time remaining of the essence. Notwithstanding specification of the extended closing date in Buyer's written notice, the Buyer retains the right to further extend the closing date by subsequent written notice, provided the extended closing date does not exceed the fifth business day following the original closing date set forth in this Agreement.

55.     Any request made pursuant to the terms of the notice provision in this Agreement, requesting an extension of the mortgage contingency deadline detailed herein shall reserve the BUYER's rights to terminate this Agreement and return of all deposit funds as contemplated herein irrespective of whether such notice specifically states that absent granting of the extension this Agreement shall be deemed terminated.

56.     Order of Conditions:  If the Premises are affected by an Order of Conditions issued by the Conservation Commission for the Town or City in which the Premises are situated or by the Environmental Protection Agency, SELLER shall provide BUYER or lender's counsel with a certificate of compliance for said Order of Conditions prior to closing.

57. EXTENSIONS FOR TITLE: Notwithstanding anything to the contrary contained in this Agreement, if SELLER extends this Agreement to perfect title or make the Premises conform as provided in Paragraph 10, and if BUYER'S mortgage commitment or rate lock would expire prior to the expiration of said extension, then such extension shall continue, at BUYER'S option, only until the date of expiration of BUYER'S mortgage commitment or rate lock.  BUYER may elect, at its sole option, to obtain an extension of its mortgage commitment or rate lock.

*Michaela Marsters*                        1/15/2025

Michaela Marsters, Buyer

*Sean M*                        1/15/2025

Sean M. Marsters, Buyer

*Janice Richard*
                        01/15/25

Janice Richard, Seller

Page 10

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In Re:

| | |
|---|---|
| **Janice Richard,** | **Chapter 13** |
| **Debtor** | **Case No. 23-11882** |

## ORDER

After notice and opportunity for hearing, it is hereby ORDERED as follows:

1. Debtor is authorized to sell the property at 17 McKinnon Avenue, Milton, MA for $930,000.00 pursuant to the Purchase and Sale Agreement dated January 15, 2025.

2. Debtor is authorized to sell the real estate free and clear of all liens, claims, interest and encumbrances with the same attached to the proceeds of the sale subject to their validity and order of priority.

3. Debtor is authorized to execute such documents as are necessary and incidental to the consummation of the transaction.

4. At the closing, the Debtor is ordered to pay the following from closing proceeds:

   a. the mortgage to Citizens Bank in full,
   b. any outstanding property taxes, water, sewer, and trash charges to the Town of Milton in full;
   c. the secured portion of the Massachusetts DOR's claim in full plus interest, which was $107,410.16 on the Petition Date;
   d. the Debtor's closing fees and costs, including to Attorney David Miller; and
   e. the broker's fee of 4%.

5. Debtor can sell the subject property upon issuance of this Order and the Court waives the 14-day appeal period required by Bankruptcy Rule 6004(h).

6. Debtor shall provide a copy of the executed Settlement Sheet to the Chapter 13 Trustee within ten days after the closing.

7. Debtor's current Plan contemplates this sale and therefore an Amended Plan is not necessary.

8. The first $500,000.00 in net proceeds from the sale after payments per clause number 4 shall be the property of the Debtors. Any proceeds exceeding that amount shall be turned over to the Chapter 13 Trustee.

Date: _____

                                        Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In Re:

    **Janice Richard,**                          **Chapter 13**
    **Debtor**                               **Case No. 23-11882**

## CERTIFICATE OF SERVICE

      I, John Ullian, hereby certify under the pains and penalties of perjury that I served the **MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS** by ECF or mailing a copy of same, postage prepaid, to the interested parties listed below and to all creditors on the attached service list.

Richard King
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Carolyn Bankowski
Chapter 13 Trustee Boston
P. O. Box 8250
Boston, MA 02114

Janice Carroll Richard
17 McKennon Avenue
Milton, MA 02186

COMES Citizens Bank, N.A
Richard T. Mulligan
Brock & Scott, PLLC
3825 Forrestgate Dr.
Winston Salem, NC 27103

Massachusetts Department of Revenue
Litigation Bureau
David Mazzuchelli
100 Cambridge St., 7th Flr.
P.O. Box 9565
Boston, MA 02114

Date:   January 23, 2025

/s/ John Ullian
John Ullian, Esq.
220 Forbes Road, Suite 106
Braintree, MA  02184
(781) 848-5980
BBO No. 542786

Label Matrix for local noticing
0101-1
Case 23-11882
District of Massachusetts
Boston
Wed Jan 15 11:02:49 EST 2025

COMES Citizens Bank, N.A
10561 Telegraph Road
Glen Allen, VA 23059-4577

Citizens Bank, N.A.
10561 Telegraph Road
Glen Allen, VA 23059-4577

Massachusetts Department of Revenue
Litigation Bureau
David Mazzuchelli
100 Cambridge St., 7th Flr.
P.O. Box 9565
Boston, MA 02114-9565

Boston
U. S. Bankruptcy Court
J.W. McCormack Post Office & Court House
5 Post Office Square, Suite 1150
Boston, MA 02109-3945

Bank of America
c/o Northstar Location Services
Attn: Financial Services Department
4285 Genesee Street
Buffalo, NY 14225-1943

Bank of America, N.A.
PO Box 673033
DALLAS, TX 75267-3033

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Citizens Bank
c/o Brock and Scott
23 Messenger Street, 2nd Floor
Plainville, MA 02762-5011

Citizens Bank, NA
10561 Telegraph Road
Glen Allen, VA 23059-4577

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Massachusetts Department of Revenue
100 Cambridge Street, 7th Floor
PO Box 9564
Boston, MA 02114-9564

Massachusetts Department of Revenue
Bankruptcy Unit
PO Box 7090
Boston, MA 02204-7090

Town of Milton
629 Randolph Ave
Milton, MA 02186-4509

Town of Milton
PO Box 350
Milton, MA 02186-0999

Town of Milton
Water/Sewer Department
629 Randolph Avenue
Milton, MA 02186-4509

Carolyn Bankowski-13-12
Chapter 13-12 Trustee Boston
P. O. Box 8250
Boston, MA 02114-0950

Janice Carroll Richard
17 McKennon Avenue
Milton, MA 02186-4828

John A. Ullian
The Law Firm of Ullian & Associates, P.C
220 Forbes Road, Suite 106
Braintree, MA 02184-2711

Richard King - B
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109-3934


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Chase
PO Box 15548
Wilmington, DE 19886


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.